# SACHS *v.* HUNDHAUSEN.

---

PATENTS; INTERFERENCE; EVIDENCE; CONSTRUCTION OF THE ISSUE.

1. While the claim of a party who files an application upon which a patent is afterward granted, that he had at the time of his application another and superior invention of the same precise nature, which he did not include in his application, and for which he did not make an application for a long time afterward, is not to be credited, unless sustained by very clear and convincing testimony, the claim of a party to an interference involving an improvement on a previous invention for which he received a patent on November 7, 1899, based upon an application filed November 14, 1898, that he made the invention involved in the interference in October or the early part of November, 1898, is not to be dis-

credited, even though his application of November 14, 1898, contained no suggestion of the invention in question, for it may have been prepared some. time before it was filed and he may have invented the improvement after the application had gone into his attorney's hands and too late to be included in it.

2. Where two counts of the issue in an interference involving an improvement in safety fuses or cut-outs, in express terms require a contact between the auxiliary fuse and the heat-dissipating filling of the cavity, while the remaining counts contain no such requirement, but simply call for an auxiliary fuse "within the casing," * * * "but projecting through the casing to the outside thereof," the auxiliary fuse, within the meaning of the latter counts, is within the casing, if it is anywhere within the outer surface of it; if it had been intended that the fuse should be within the cavity of the casing, it should have been so stated.

No. 221. Patent Appeals. Submitted March 10, 1903. Decided April 7, 1903.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Reversed as to certain counts of the issue and affirmed as to others.*

The facts are sufficiently stated in the opinion.

*Mr. Edmund Wetmore* and *Mr. Melville Church* for the appellant.

*Mr. W. M. Fairfax* and *Mr. Charles A. Brown* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from the Commissioner of Patents in an interference case.

The subject-matter of controversy is an electrical appliance purporting to be an improvement in safety fuses or cut-outs, as they are sometimes called, which are used for the protection of electric circuits and instruments connected therewith from the injurious effects of unduly strong electric cur-

rents. It has been formulated and stated in nine counts, as follows:

" 1. In an electric fuse or cut-out, the combination with an enveloped main fuse wire and its casing, of an auxiliary or indicating fuse wire within the casing but having an indicating part extending to the outside of said casing.

" 2. In an electric fuse or cut-out, the combination with an enveloped main fuse wire and its casing, of an auxiliary or indicating fuse wire within the casing, but having a part projecting through the casing to the outside thereof.

" 3. In an electric fuse or cut-out, the combination with an enveloped main fuse wire and its casing, of an auxiliary or indicating fuse wire within the casing, but having a part looped through the wall of the casing to the outside thereof.

" 4. In an electric fuse or cut-out, the combination with an enveloped fuse wire and its casing, of an auxiliary or indicating fuse wire within the casing, but laced through openings in the wall of the casing so that a part thereof lies on the outside of the casing.

" 5. In an electric fuse or cut-out, a casing, a fuse wire within the casing, but having a part between its ends extending to the outside thereof, and a heat-dissipating filling within the casing making contact with that part of the fuse wire which lies within the casing.

" 6. In an electric fuse or cut-out, a casing, a fuse wire within the casing, but laced through openings in the wall thereof so that part of the fuse wire lies outside of the casing, and a heat-dissipating filling within the casing making contact with that part of the fuse wire which lies within the casing.

" 7. In a safety fuse, the combination with a case and means mechanically closing the ends thereof, of a fusible strip extending through the case, terminals for the said fuse and an indicator wire partially within the case and partially exposed upon the outer surface of the case with its ends electrically connected with the fusible strip.

" 8. In a safety fuse, the combination with a case, its ends and terminals, of a fusible strip extending through the case

and electrically connected with the ends and terminals and an indicator wire partially within the case and partially exposed upon the outer surface of the case with its ends electrically connected with the fusible strip.

" 9. In a safety fuse, the combination with a case and means mechanically closing the ends thereof, of a fusible strip extending through the case, a nonconducting filling material in the case surrounding the fusible strip, terminals for the said fusible strip, and an indicator wire partially within the case and partially exposed upon the outer surface of the case with its ends electrically connected with the fusible strip."

All of these counts, except those numbered 5 and 6, are merely measurements of the same signal invention in different language,— although there is perhaps some little technical difference between count No. 9 and the other counts. All these counts require two wires, one the fusible strip, and the other the auxiliary or indicating fuse wire. Counts 5 and 6 differ from the others in so far as that they call for only one wire.

There were originally three parties to the interference; namely, the appellant Joseph Sachs, the appellee Rudolph Hundhausen, and one Louis W. Downes. But the last named has dropped out of the case. Curiously enough, however, the claims of these several counts, as now formulated, were made in the first instance by Downes, and not by either of the other two applicants, to whom they were suggested by the officials of the Patent Office in accordance with the practice now prevailing in the office.

The appellee Hundhausen is the senior applicant. He filed his application in the Patent Office on November 24, 1899. Upon the declaration of the interference he neither filed any preliminary statement, nor took any testimony other than that of one expert witness not here deemed to be important; and he relies entirely upon the date of his application as that of his conception of the invention and reduction of it to practice.

The appellant Sachs is the junior applicant. He filed his application on February 19, 1900, nearly three months after that of his rival. In his preliminary statement filed upon the declaration of interference he alleged conception of the invention by him in September of 1898, and disclosure by him and reduction to practice in November, 1898. And he proceeded to adduce testimony in support of his statement.

The examiner of interferences awarded judgment of priority of invention to Sachs as to counts 1, 2, 3, 4, 7 and 8; and to Hundhausen as to counts 5, 6 and 9. Both parties appealed. A majority of the board of examiners-in-chief practically affirmed the decision of the examiner of interferences. They reversed it, however, as to count 9, which was also awarded in favor of Sachs. The third member of the board was in favor of Sachs on every count of the issue. Again both parties appealed; and on this appeal the Commissioner of Patents wholly reversed the decision of the board of examiners, and awarded judgment of priority of invention to Hundhausen on all the counts of the issue.

From this decision the present appeal has been taken by Sachs to this court.

It is proved in the case by the appellant Sachs, and apparently it is not controverted, at least it is not seriously controverted, that in November, 1898, Sachs made some six different safety fuses, specimens of which were produced by him in evidence, and all of which, if the construction put upon the counts of the issue by the examiner of interferences and by the board of examiners-in-chief be correct, undoubtedly embody the invention in question. All the tribunals of the Patent Office concur in so holding; and their conclusion is fully justified by the evidence. In fact there is no evidence to the contrary. It may be stated that, during the taking of the testimony, the appellant Sachs upon cross-examination was requested by the counsel for the appellee to make a cross-section sketch of these fuses which he claimed to have made in November of 1898, and that he then and there did so; and that this sketch, designated in the record as " Hundhausen Exhibit Sachs Sketch A," was filed as an exhibit to

the testimony. Upon the construction referred to, this sketch undoubtedly shows the invention of the issue. If that construction is incorrect, and the construction claimed on behalf of the appellee be the correct one, it is conceded that the appellant did not have the invention before the date of the filing of the appellee's application.

There is, however, one circumstance to which reference is made on behalf of the appellee as tending to show that the appellant did not have the invention of the issue in October or November of 1898, when he claims to have had it. The invention is an improvement on a previous invention for which a patent had been issued to the appellant on November 7, 1899, based upon an application filed by him on November 14, 1898; and it is argued that, if the appellant had the present invention in the early part of November, 1898, he would and should have included it in the application made on the fourteenth day of that month. Ordinarily, of course, the claim of a party, who files an application for an invention for which he receives a patent, to have had at the very time of the application another and superior invention of the same precise nature, which he does not include in the application, and for which he does not make application for a long time afterwards, is not to be credited, unless it is sustained by very clear and convincing testimony.

But no such rule should prevail in the case before us. For it may well be inferred that, although the appellant's application of November 14, 1898, which led to the patent of November 7, 1899, did not contain any suggestion of the invention here in question, that application may have been prepared some time before it was filed, and it required some time to prepare it and to prepare the specifications and drawings for it. And it is not at all improbable that, when the matter had gone out of his hands into those of his attorneys, the appellant might still have the problem of the invention in mind, and devised the present improvement too late to insert it in that application.

We find nothing in this circumstance to discredit the ap-

pellant's claim to have made the invention in October or the early part of November, 1898.

The controversy, therefore, is narrowed down to the inquiry whether the construction placed by the appellant on the counts of the issue, and which was sustained by the examiner of interferences and by the board of examiners-in-chief, is correct; or whether that of the appellee, which was sustained by the Commissioner, is the true and proper one. The construction of the appellee shows the auxiliary fuse, as well as the main fuse, wholly within the cavity of the casing, which is filled with a heat-dissipating filling through which the electric wire is run, except for the small part which projects to the outside of the casing. On the other hand, the construction of the appellant, although it shows the cavity of the casing filled with a heat-dissipating filling and the wire of the main fuse running through it, shows the auxiliary wire, inclosed in what may be called the shell of the casing, outside of the cavity, but inside of the outer surface — not merely covered with thin tissue paper, as was formerly thought to be sufficient, but imbedded within the shell and only visible in the one or two places where it was necessary for it to be projected outside of the surface.

For counts 5 and 6 of the issue the construction claimed by the appellee is undoubtedly the correct one. Those counts in express terms require a contact between the auxiliary fuse and the heat-dissipating filling of the cavity; and that contact is not shown by " Hundhausen Exhibit Sachs Sketch A." But the other counts of the issue contain no such requirement. They simply call for an auxiliary fuse " *within the casing* " " *but projecting through the casing to the outside thereof.*" We agree with the board of examiners-in-chief and the examiner of interferences that the auxiliary fuse, in the meaning of these counts, is within the casing, if it is anywhere within the outer surface of it. That seems to us to be the natural meaning of the expression; and we think that any other construction would unduly restrict it. Of course, the expression is capable of both meanings according to circumstances. We can say of a man that he has gone into a

house when he has gone inside the door and inside the walls of the house. We can say of a brick or a stone that it has gone into the house, when in the course of construction it has gone into the outer wall and even remains visible to the naked eye. *" To be within the casing "* of an electric fuse is in itself perhaps an expression of dubious import, resulting from the fact that ordinarily we regard the wall of the casing as an integral thing. But when we come to recognize subdivisions in this casing, and to find that an electric wire may be drawn through the wall or shell of a casing and serve its purpose as well as a wire drawn merely through the filling of a cavity, it would be a distortion of the words used to hold that that is not on the inside which is in fact on the inside. Whatever is not without the casing is necessarily within it. Whether it is in one place or another of the interior, is a secondary consideration. As well might it be argued, that, if there were two casings, one fitting closely within the other, yet so that an electric wire might be extended between them, yet such electric wire would not be within the casing. This certainly would not be the ordinary understanding. In such a case, in order to confine an issue to the internal cavity, it would be necessary specifically so to state. And so in the present case, if it had been intended that the auxiliary fuse in question should be within the cavity of the casing, it should have been so stated. We find nothing in the record of this case which warrants the restricted construction contended for by the appellee.

We think, therefore, that priority of invention should be awarded to the appellant Sachs as to all the counts of the issue, except those numbered 5 and 6; and that, as to counts numbered 5 and 6, judgment of priority of invention should be awarded to the appellee Hundhausen. The decision of the Commissioner is reversed as to all the counts of the issue, except those numbered 5 and 6.

The clerk of the court will certify this opinion, and the proceedings of the court in the premises, to the Commissioner of Patents according to law.

*Reversed in part and affirmed in part.*